**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
FERMIN   CARDOZA   VASQUEZ   AND
ISANDRA ISMAEL-RAMOS,

                   Plaintiff,

      -against-

PUEMEX,   INC.   D/B/A   LA   CHINA
POBLANA   &   PODER   DEL   NORTE
AND YOLANDA HERNANDEZ,

              Defendants.
-----------------------------------------------------X

       Civ. Action No.

       **COMPLAINT**

       Plaintiffs, FERMIN CARDOZA VASQUEZ ("Cardoza Vasquez") and ISANDRA ISMAEL-RAMOS ("Ismael-Ramos") (collectively, "Plaintiffs"), as and for their Complaint against Defendants, PUEMEX, INC. d/b/a LA CHINA POBLANA & PODER DEL NORTE ("Puemex") and YOLANDA HERNANDEZ ("Hernandez") (collectively, "Defendants"), respectfully allege as follows:

## NATURE OF THE ACTION

1.     Defendants own and operate a manufacturing facility known as Puemex, Inc. d/b/a La China Poblana & Poder Del Norte in Ronkonkoma, New York.

2.     Cardoza Vasquez worked for Defendants as a machine operator.

3.     Ismael-Ramos worked for Defendants as a products packer.

4.     Plaintiffs bring this lawsuit seeking to recover unpaid overtime wages and other relief related to their employment with Defendants.

## JURISDICTION AND VENUE

5.     Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., Articles 6 and 19 of the New York Labor Law ("NYLL"), and their respective

attendant regulations.

6.      Jurisdiction over Plaintiffs' FLSA claims is based upon Section 216(b) of the FLSA, 29 U.S.C. § 216(b), and upon 28 U.S.C. § 1331.

7.      The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a) because these claims are so related to the FLSA claims that they form part of the same case or controversy.

8.      Venue in this district is appropriate under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial district.

## PARTIES

9.      Cardoza Vasquez is an adult male currently residing in the State of New York.

10.     Ismael-Ramos is an adult female currently residing in the State of New York.

11.     Hernandez is an adult female currently residing in the State of New York.

12.     Upon information and belief, Puemex is a domestic business corporation duly organized and existing under the laws of the State of New York.

## FACTUAL ALLEGATIONS

### Defendant Puemex, Inc. d/b/a La China Poblana & Poder Del Norte

13.     Puemex maintains a principal place of business located at 2073 9th Avenue, Ronkonkoma, New York 11779.

14.     At all times relevant to this Complaint, Puemex had and continues to have employees engaged in commerce or in the production of goods and services for commerce, including Plaintiffs.

15.     At all times relevant to this Complaint, Puemex had and continues to have employees who handle, sell, or otherwise work on goods or materials that have been moved in or

produced for interstate commerce, including Plaintiffs.

16.    At all times relevant to this Complaint, Puemex had an annual gross volume of sales of not less than $500,000.00 for each applicable year of Plaintiffs' employment.

17.    During Plaintiffs' employment, Puemex maintained control, oversight, and direction over them, including timekeeping, payroll, and other employment practices.

18.    At all times relevant to this Complaint, Puemex was and is a covered employer within the meaning of the FLSA and the NYLL and, and at all times relevant to this Complaint, employed Plaintiffs.

**Defendant Yolanda Hernandez**

19.    At all relevant times, Hernandez was and continues to be an owner, shareholder, officer, director, and/or managing agent of Puemex.

20.    At all relevant times, Hernandez participated in running the daily operations of Puemex.

21.    At all relevant times, Puemex participated in the management and supervision of Plaintiffs and their work for Puemex.

22.    At all relevant times, Hernandez exercised operational control over Puemex, controlled significant business functions of Puemex, determined employee salaries, made hiring decisions, and acted on behalf of, and in the interest of, Puemex in devising, directing, implementing, and supervising the wage and hour practices and policies relating to their employees, including Plaintiffs.

23.    Hernandez determined the wages and compensation of Puemex's employees, established the schedules of its employees, maintained its employee records, and had the authority to hire and fire its employees, including as such practices applied to Plaintiffs.

24.    Hernandez participated in the decision to hire Plaintiffs.

25.    Hernandez participated in the decision to fire Plaintiffs.

26.    Hernandez participated in deciding Plaintiffs' job duties and responsibilities.

27.    Hernandez participated in supervising Plaintiffs' job duties and responsibilities.

28.    Hernandez participated in deciding the manner in which Plaintiffs were paid.

29.    Hernandez participated in deciding the hourly rate Plaintiffs were paid.

30.    Hernandez participated in deciding the compensation Plaintiffs were paid.

31.    Hernandez participated in deciding the schedule Plaintiffs worked.

32.    Hernandez participated in deciding the total number of hours Plaintiffs worked each week.

33.    Hernandez was responsible for ensuring Plaintiffs were paid properly.

34.    At all relevant times, Hernandez was an employer within the meaning of the FLSA and the NYLL and employed Plaintiffs.

**Defendants Constitute Joint Employers**

35.    Upon information and belief, Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

36.    Defendants possessed substantial control over Plaintiffs' working conditions and over the policies and practices with respect to the employment and compensation of Plaintiffs.

37.    Defendants dictated, controlled, and ratified the wage and hour and all related employee compensation policies during Plaintiffs' employment.

38.    Defendants jointly employed Plaintiffs and are Plaintiffs' joint employers within the meaning of the FLSA and the NYLL.

4

**Plaintiff Fermin Cardoza Vasquez**

39.    At all relevant times, Cardoza Vasquez was an employee of Defendants as defined by the FLSA and the NYLL.

40.    Defendants employed Cardoza Vasquez from on or about March 20, 2020 through September 15, 2020, and again from on or about April 15, 2022 through on or about October 4, 2024.

41.    Defendants employed Cardoza Vasquez as a machine operator for their benefit and at their direction.

42.    Cardoza Vasquez's job duties included operating the dough machine.

43.    Throughout Cardoza Vasquez's employment, he worked five (5) days per week with Saturday and Sunday off.

44.    Cardoza Vasquez's shifts began at approximately 5:00 a.m. and ended at 3:00 p.m., with a 30-minute meal-break.

45.    During this time, Cardoza Vasquez worked approximately forty-seven and one- half (47.5) hours each week.

46.    From the beginning of  Cardoza Vasquez's employment, until on or about September 15, 2020, and again from on or about April 15, 2022 until on or about October 4, 2024, Defendants paid him an hourly rate of pay.

47.    However, Defendants only paid Cardoza Vasquez "straight-time" for all hours worked each week.

48.    Throughout Cardoza Vasquez's employment, Defendants never paid him an overtime premium for any of the hours he worked in excess of forty (40) per week at the "half-time" rate of his regular hourly rate of pay.

49.     Defendants did not provide Cardoza Vasquez with a complete and accurate wage notice when he was hired, or at any time thereafter, as required by NYLL § 195(1).

50.     Defendants did not provide Cardoza Vasquez with complete and accurate paystubs along with his weekly earnings, as required by NYLL § 195(3).

51.     Because Defendants did not provide Cardoza Vasquez with complete and accurate wage notices and paystubs, he was kept in the dark about how much he should have been paid.

52.     Had Defendants provided such wage notices and statements, Cardoza Vasquez would have been more likely to know that he was entitled to overtime compensation for the hours he worked in excess of forty (40) each week, and he could have advocated for himself and brought this lawsuit earlier to enforce his rights under state and federal law.

53.     However, because Defendants did not provide Cardoza Vasquez with complete and accurate wage notices and paystubs, he could not rectify the situation, which resulted in his continued underpayment of wages.

54.     As a result of Defendants' failure to provide the required wage notices and statements, Cardoza Vasquez has incurred tangible, downstream harm.

55.     Defendants were aware of Cardoza Vasquez's work hours but failed to pay him the proper wage to which he was entitled under the law.

56.     Upon information and belief, Defendants were aware of the federal and state wage and hour laws.

57.     Upon information and belief, Defendants knowingly disregarded the federal and state wage and hour laws.

58.     Defendants' failure to pay proper wages in a timely manner has been made without good faith, willfully, and with a reckless disregard for Cardoza Vasquez's rights.

59.     Cardoza Vasquez has been and continues to be damaged by such failures in an amount to be determined at trial, including without limitation, unpaid wages, liquidated damages, statutory damages, interest, and attorneys' fees and costs.

**Plaintiff Isandra Ismael-Ramos**

60.     At all relevant times, Ismael-Ramos was an employee of Defendants as defined by the FLSA and the NYLL.

61.     Defendants employed Ismael-Ramos from on or about November 4, 2020 through on or about October 16, 2024, with a maternity break from on or about February 15, 2022 through on or about June 14, 2022.

62.     Defendants employed Ismael-Ramos as a product packer for their benefit and at their direction.

63.     Ismael-Ramos' job duties included packing tortillas into boxes for shipment.

64.     Throughout Ismael-Ramos' employment, she worked six (6) days per week with Sunday off. One (1) week per month she also had Saturday off.

65.     Ismael-Ramos' shifts on Mondays, Tuesdays, and Fridays began at approximately 4:00 a.m. and ended at about 3:00 p.m., with a 30-minute meal break per shift, Wednesdays and Thursdays at approximately 4:00 a.m. until about 2:00 p.m., with a 30-minute meal break per shift, and Saturdays from approximately 4:00 a.m. until about 9:30 a.m.

66.     During this time, Ismael-Ramos worked approximately fifty-six (56) hours each week if she worked Saturday, and approximately fifty and one- half (50.5) hours for the weeks she did not work Saturday.

67.     From the beginning of  Ismael-Ramos' employment until December 31, 2023, Defendants paid her an hourly rate of $15.50.

68. From on or about January 1, 2024 until the end of Ismael-Ramos' employment, Defendants paid her an hourly rate of $16.00.

69. However, Defendants only paid Ismael-Ramos "straight-time" for all hours worked each week.

70. Throughout Ismael-Ramos' employment, Defendants never paid her an overtime premium for any of the hours she worked in excess of forty (40) per week at the "half-time" rate of her regular hourly rate of pay.

71. Throughout 2024, Defendants never paid Ismael-Ramos spread-of-hours compensation for any day in which her shifts exceeded ten (10) hours at a rate of one (1) additional hour of pay at the statutory minimum wage rate.

72. Defendants did not provide Ismael-Ramos with a complete and accurate wage notice when she was hired, or at any time thereafter, as required by NYLL § 195(1).

73. Defendants did not provide Ismael-Ramos with complete and accurate paystubs along with her weekly earnings, as required by NYLL § 195(3).

74. Because Defendants did not provide Ismael-Ramos with complete and accurate wage notices and paystubs, she was kept in the dark about how much she should have been paid.

75. Had Defendants provided such wage notices and statements, Ismael-Ramos would have been more likely to know that she was entitled to overtime compensation for the hours she worked in excess of forty (40) each week, and she could have advocated for herself and brought this lawsuit earlier to enforce her rights under state and federal law.

76. However, because Defendants did not provide Ismael-Ramos with complete and accurate wage notices and paystubs, she could not rectify the situation, which resulted in her continued underpayment of wages.

77.    As a result of Defendants' failure to provide the required wage notices and statements, Ismael-Ramos has incurred tangible, downstream harm.

78.    Defendants were aware of Ismael-Ramos' work hours but failed to pay her the proper wage to which she was entitled under the law.

79.    Upon information and belief, Defendants were aware of the federal and state wage and hour laws.

80.    Upon information and belief, Defendants knowingly disregarded the federal and state wage and hour laws.

81.    Defendants' failure to pay proper wages in a timely manner has been made without good faith, willfully, and with a reckless disregard for Ismael-Ramos' rights.

82.    Ismael-Ramos has been and continues to be damaged by such failures in an amount to be determined at trial, including without limitation, unpaid wages, liquidated damages, statutory damages, interest, and attorneys' fees and costs.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 201 ET. SEQ.**
**<u>FAILURE TO COMPENSATE FOR OVERTIME</u>**

83.    Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

84.    The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce, or [are] employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).

85.    Defendants are subject to the overtime pay requirements of the FLSA because Puemex is an enterprise engaged in commerce or in the production of goods for commerce.

86.    At all times relevant to this Complaint, Puemex had two (2) or more employees handling goods or materials that have moved in interstate commerce, including Plaintiffs.

87.    Upon information and belief, the gross annual volume of sales made or business done by Puemex in each applicable year of Plaintiffs' employment was not less than $500,000.00.

88.    At all times relevant to this action,  Plaintiffs have been entitled to the rights, benefits, and protections granted by the FLSA, 29 U.S.C. § 207, *et seq*.

89.    Section 207(a)(1) of the FLSA states that an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week.

90.    By the above-alleged conduct, Defendants have violated the FLSA by failing to pay Plaintiffs overtime compensation as required by the FLSA.

91.    Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from the overtime compensation requirements set forth in Section 207(a)(1) of the FLSA.

92.    However, none of the Section 13 exemptions apply to Plaintiffs because they did not meet the requirements for coverage under the exemptions during their employment.

93.    Defendants acted willfully and either knew that their conduct violated the FLSA or showed a reckless disregard for whether their conduct violated the FLSA.

94.    Defendants did not act in good faith with respect to the conduct alleged herein.

95.    As a result of Defendants' violations of the FLSA, Plaintiffs incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation, pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**VIOLATION OF THE NEW YORK LABOR LAW**
**ARTICLES 6 AND 19**
**FAILURE TO PAY OVERTIME**

96. Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

97. At all times relevant to this Action, Plaintiffs have been employed by Defendants within the meaning of New York Labor Law §§2 and 651.

98. Under New York law, an employee must be paid overtime, equal to one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week in the manner and methods provided by the FLSA.

99. By the above-alleged conduct, Defendants failed to pay Plaintiffs overtime compensation as required by the NYLL.

100. Plaintiffs were not exempt from the overtime provisions of the NYLL because they did not meet the requirements for any of the exemptions available under New York law.

101. Defendants have acted willfully and have either known that their conduct violated the NYLL or have shown a reckless disregard for whether their conduct violated the NYLL.

102. Defendants have not acted in good faith with respect to the conduct alleged herein.

103. As a result of Defendants' violations of the NYLL, Plaintiffs have incurred and continue to incur harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation, pursuant to the NYLL.

**COUNT III**
**ON BEHALF OF ISMAEL-RAMOS ONLY**
**VIOLATION OF THE NEW YORK LABOR LAW**
**ARTICLE 6 AND 19**
**FAILURE TO PAY SPREAD OF HOURS COMPENSATION**

104. Plaintiffs reassert and reallege the allegations set forth in each of the above

paragraphs as though fully set forth herein.

105.    In violation of the NYLL and the Regulations pertaining thereto, Defendants failed to pay Ismael-Ramos an additional hour of pay at the statutory minimum wage rate when the spread of hours between the beginning and end of Ismael-Ramos' workday exceeded ten (10) hours.

106.    Such failures constituted outrageous conduct, made knowingly and willfully, or with a reckless indifference to Ismael-Ramos' rights.

107.    As a result of Defendants' violation of the NYLL and the regulations pertaining thereto, Ismael-Ramos has incurred harm and loss in an amount to be determined at trial, along with liquidated damages, interest, and attorneys' fees and costs of litigation.

**COUNT IV**
**VIOLATION OF THE NEW YORK LABOR LAW**
**NYLL SECTION 195(1)**
**FAILURE TO PROVIDE WAGE NOTICES**

108.    Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

109.    Defendants willfully failed to furnish Plaintiffs with wage notices during their employment, including the date of their hiring, as required by NYLL § 195(1), in English or in the language identified by the employee as their primary language, which were to contain, among other things, the employee's rate or rates of pay and basis thereof; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and the employee's regular hourly rates of pay and overtime rates of pay.

110.    Through their knowing and intentional failure to provide Plaintiffs with the wage notices required by the NYLL, Defendants have willfully violated NYLL §§ 190 et seq. and the

12

supporting Regulations.

111.    Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover statutory penalties, together with costs and attorneys' fees provided by NYLL § 198(1-b).

### COUNT V
### VIOLATION OF THET NEW YORK LABOR LAW
### NYLL SECTION 195(3)
### FAILURE TO PROVIDE WAGE STATEMENTS

112.    Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

113.    Defendants willfully failed to provide Plaintiffs with complete, accurate, and written wage statements with his wages each week as required by NYLL § 195(3), which were to include, among other things, the dates of work covered by each payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; deductions; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular hours worked and the number of overtime hours worked.

114.    Through their knowing and intentional failure to provide Plaintiffs with wage statements required by the NYLL, Defendants have willfully violated NYLL §§ 190 et seq. and the supporting Regulations.

115.    Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover statutory penalties, together with costs and attorneys' fees as provided by NYLL § 198(1-d).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, by and through their attorneys, The NHG Law Group, P.C., demands judgment against Defendants, jointly and severally, and in favor of Plaintiffs for a sum that will properly, adequately, and completely compensate Plaintiffs for the nature, extent, and duration of the damages, costs of this action, and as follows:

13

A.   Declare and find that Defendants committed one or more of the following acts:

   1.   Willfully violated provisions of the FLSA by failing to pay Plaintiffs overtime compensation;

   2.   Willfully violated the provisions of the NYLL by failing to pay Plaintiffs overtime compensation and Ismael-Ramos spread-of-hours compensation;

   3.   Willfully violated the provisions of the NYLL by failing to provide Plaintiffs with complete and accurate written wage notices and statements;

B.   Award compensatory damages, including all unpaid wages owed, in an amount according to proof;

C.   Award liquidated damages under the NYLL or, in the alternative, the FLSA;

D.   Award statutory penalties for Defendants' NYLL Section 195 record keeping violations;

E.   Award interest on all unpaid wages due accruing from the date such amounts were due;

F.   Award all costs and attorneys' fees incurred in prosecuting this action;

G.   Award an automatic fifteen percent (15%) increase with respect to any damages not paid within the later of ninety (90) days following the issuance of judgment or the expiration of the time to appeal pursuant to the NYLL; and,

H.   Provide such further relief as the Court deems just and equitable.

Dated: Massapequa, New York           The NHG Law Group, P.C.
          February 7, 2025

                                      _____
                                      By: Keith E. Williams, Esq.
                                      *Attorneys for the Plaintiffs*
                                      4242 Merrick Road
                                      Massapequa, New York 11758
                                      Tel: 516.228.5100
                                      keith@nhglaw.com

14